USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 5, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
WILLIAM YATES,

                           Plaintiff,

                  v.

DR. JORGE VILLALOBOS and JOHN DOE
#1, Medical Nurse at the George Motchan
Detention Center, Rikers Island,

                         Defendants.
------------------------------------------------------- X

15 Civ. 8068 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff William Yates brings this *pro se* action under 42 U.S.C. § 1983, claiming deliberate indifference on the part of prison medical personnel to his serious medical needs. In brief, Plaintiff alleges that he was bitten by a tick while subject to pretrial detention at the George Motchan Detention Center ("GMDC") on Rikers Island from September 1, 2014, until December 22, 2014. That tick bite, he claims, caused him to contract Lyme disease and, ultimately, to suffer various related symptoms and injuries, including a mild seizure, lockjaw, facial numbness, and Bell's palsy.

Defendant Dr. Jorge Villalobos, the physician who treated Plaintiff at GMDC, now moves to dismiss Plaintiff's Second Amended Complaint.[1] He

---

[1] Plaintiff initially named two John Doe Defendants, with the first identified as the nurse who treated Plaintiff at GMDC and the second identified as the doctor who treated Plaintiff there. (Dkt. #31). The City of New York Law Department was able to provide only the second defendant's identity, and he is named here as Dr. Villalobos. John Doe Defendant 1 has yet to be identified, but the Law Department, who acts as counsel for

asserts that he had no knowledge that Plaintiff had been bitten by a tick, contracted Lyme disease, or suffered any attendant injuries, and that Plaintiff has not and cannot allege otherwise. He argues consequently that Plaintiff's claim fails as a matter of law because Plaintiff is unable to allege that he was deliberately indifferent to Plaintiff's medical needs. The Court agrees. Accordingly, the Court grants Defendant's motion to dismiss.

## BACKGROUND[2]

### A.  Factual Background

From September 1, 2014, until December 22, 2014, Plaintiff was detained at the GMDC on Rikers Island, where he awaited trial on two

---

Defendant Villalobos, argues that any claims against the John Doe Defendant should be dismissed on the same bases advanced in the instant motion. (*See* Dkt. #56 at 1 n.1).

[2]  This Opinion draws its facts from the well-pleaded allegations of Plaintiff's Second Amended Complaint ("SAC" (Dkt. #31)). It also draws on statements that Plaintiff made during a pre-motion conference with the Court on March 22, 2016. (*See* Transcript of Pre-Motion Conference ("PMC Tr." (Dkt. #55-1))). Because *pro se* litigants are afforded "a substantial degree of solicitude," *Tracy* v. *Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), on a motion to dismiss, a court may consider factual allegations made in, and documents appended to, the plaintiff's opposition papers, *Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). Courts may also consider statements made in response to a defendant's request for a pre-motion conference and statements made during that conference. *See, e.g.*, *Lopez* v. *Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015) (compiling cases); *Jones* v. *Fed. Bureau of Prisons*, No. 11 Civ. 4733 (KAM) (MDG), 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013). Because of the solicitude due to *pro se* plaintiffs, the Court here considers statements that Plaintiff made at the pre-motion conference, as Plaintiff's allegations in the Second Amended Complaint otherwise lack factual allegations sufficient to raise a "right to relief above the speculative level." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 545, 555 (2007). For purposes of this Opinion, the Court assumes that the Second Amended Complaint's allegations, as supplemented by statements Plaintiff made at the pre-motion conference, are true. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

Defendant cites decisions from sister courts in this Circuit that, in Defendant's estimation, suggest that this Court may take judicial notice of — and may therefore consider — Plaintiff's statements made during the pre-motion conference. (Dkt. #54 (citing *Castagna* v. *Luceno*, No. 09 Civ. 9332 (CS), 2011 WL 1584593, at *5 (S.D.N.Y. Apr. 26, 2011); *Obilo* v. *City Univ. of City of N.Y.*, No. 01 Civ. 5118 (DGT), 2003 WL 1809471, at *3 n.10 (E.D.N.Y. Apr. 7, 2003)). Those cases — as Defendant has interpreted them — appear to be in tension with cases where the Second Circuit held that, though courts may take judicial notice of statements or documents, they may only

2

non-violent charges. (SAC 2). On the morning of September 26, 2014, Plaintiff "[d]iscovered a small circular mark on [his] right arm." (*Id.*). At the time, Plaintiff did not know that the mark may have been caused by a tick bite. (PMC Tr. 3:4-7).

During his detention at GMDC, Plaintiff twice received medical treatment for high blood pressure. (PMC Tr. 3:12-15). The first treatment was in September 2014, shortly after his arrival, during which the medical staff checked Plaintiff's blood pressure and prescribed medication to treat his high blood pressure. (*Id.* at 3:18-25, 4:1-4). Plaintiff did not ask them to perform any other examinations or to look at any mark on his arm. At the second visit, approximately one month later, GMDC staff again checked Plaintiff's blood pressure and confirmed that the medication prescribed during the earlier visit was having its intended effect. (*Id.* at 4:5-15). The only other medical treatment Plaintiff received during his detention at GMDC involved a dental cleaning in September 2014. (*Id.* at 4:16-5:1).

Plaintiff acknowledges that he did not mention the circular mark on his arm during any of his visits to the GMDC medical center. (PMC Tr. 7:13-24).

---

do so for the limited purpose of establishing that those documents or statements exist, not to establish the truth of the matters asserted. *See, e.g.*, *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Network Commc'ns, Inc.* v. *City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). Mindful of those decisions, the Court here considers the statements that Plaintiff made during the pre-motion conference not because it takes judicial notice of those statements, but rather because of the solicitude due to *pro se* plaintiffs, and because Plaintiff's pleadings are otherwise lacking in factual detail.

Additionally, for ease of reference, this Opinion refers to Defendant's motion to dismiss as "Def. Br." (Dkt. #54); to Plaintiff's opposition brief as "Pl. Opp." (Dkt. #61); and to Defendant's reply brief as "Def. Reply" (Dkt. #62).

Nor did he seek treatment directly from Defendant for any symptoms relating to the mark on his arm. (*Id.* at 6:15-20). At a pre-motion conference, held on March 22, 2016, the Court asked Plaintiff whether he sought any assistance from any GMDC personnel for symptoms relating to the mark on his arm; he stated unequivocally that he had not. (*Id.* at 7:22-24).

In the Second Amended Complaint, filed on August 2, 2016, Plaintiff alleges that he "file[d] a gri[e]vance" with Defendants on October 5 and 9, 2014. (SAC 2, 4). He further alleges that Defendant and others at GMDC failed to examine him or provide a diagnosis in response to his filing. (*Id.*). He does not allege that he showed any medical personnel (including Defendant) the mark on his arm, told them that he may have been bitten by a tick, or indicated that he was experiencing any symptoms related to the tick bite. (*See generally* SAC). As of December 22, 2014, when Plaintiff posted bail and left GMDC (PMC Tr. 6:5-8), Plaintiff himself did not suspect that the mark on his arm had been caused by a tick bite or that he may have contracted any disease as a result (*id.* at 6:15-20).

Plaintiff began to experience symptoms — including a mild seizure, facial numbness, lockjaw, and facial disfigurement — five months after his release from GMDC, in May 2015. (SAC 3; PMC Tr. 8:11-19). Upon experiencing these symptoms, Plaintiff visited the emergency room at Brookdale Hospital. The treating physicians did not diagnose Plaintiff with Lyme disease, and Plaintiff did not ask anyone to examine his arm. (PMC Tr. 8:15-9:16, 11:4-11). Nor did he mention anything about the mark on his arm when he returned to

Brookdale Hospital for a follow-up consultation the following month. (*Id.* at 12:6-23).

It was only in July 2015 that Plaintiff first learned that he had contracted Lyme disease and that the mark on his arm was likely caused by a tick bite. By then, Plaintiff was incarcerated in New York and was under the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (PMC Tr. 13:3-13). Routine bloodwork that DOCCS conducted revealed that Plaintiff had contracted Lyme disease. (*Id.*). And it was only then that Plaintiff was informed that the mark on his arm may have been caused by a tick bite. (*Id.* at 14:1-3).

## B.     Procedural Background

Plaintiff brought this case on October 9, 2015. (Dkt. #1). The Court held a pre-motion conference on March 22, 2016, at the conclusion of which the Court permitted Plaintiff to file an amended complaint. (Dkt. #55-1). Plaintiff twice took advantage of that opportunity: He filed a First Amended Complaint on May 17, 2016 (Dkt. #18), and a Second Amended Complaint on August 2, 2016 (Dkt. #31). On April 14, 2017, Defendant filed the instant motion to dismiss. (Dkt. #54). Plaintiff filed his opposition brief on June 13, 2017 (Dkt. #61), after which Defendant filed his reply brief on June 21, 2017 (Dkt. #62).

## DISCUSSION

## A.     Motion to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all

well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 554, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Courts are to construe *pro se* plaintiffs' complaints more liberally than they do complaints filed by counsel. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*

6

v. *Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (a *pro se* party's pleadings should be construed liberally and interpreted "to raise the strongest arguments that they suggest") (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, even *pro se* pleadings must contain factual allegations that "raise a right to relief above the speculative level." *Dawkins* v. *Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555).

**B.  Plaintiff Has Failed to Plead a Viable Deliberate Indifference Claim**

Courts in the Second Circuit analyze a pretrial detainee's claims of unconstitutional conditions of confinement, such as inadequate medical care, under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *Darnell* v. *Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Nevertheless, "[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere* v. *Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). A claim for inadequate medical care requires a showing of "deliberate indifference to … serious medical needs," which in turn requires proof of two elements: "medical need" and "deliberate indifference." *Smith* v. *Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

**1.  Defendant Does Not Dispute that Plaintiff's Medical Needs Were Sufficiently Serious to Support a Claim for Relief**

The first element, "medical need," is objective, measuring "the severity of the alleged deprivation." *Smith*, 316 F.3d at 183-84. Courts assessing this

7

prong "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause" the plaintiff. *Salahuddin* v. *Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Factors informing this analysis include "[i] whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' [ii] whether the medical condition significantly affects daily activities, and [iii] 'the existence of chronic and substantial pain.'" *Brock* v. *Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance* v. *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). In addition, "the actual medical consequences that flow from the alleged denial of care will be highly relevant[.]" *Smith*, 316 F.3d at 187.

Defendant assumes, for purposes of this motion, that Plaintiff's condition was objectively serious, and sufficiently so to satisfy the first prong of the inquiry into the adequacy of medical care that Plaintiff received. Because Defendant concedes the point, the Court does not address it in any depth here. The Court simply notes that Plaintiff's allegations — that he noticed a circular mark on his arm suggestive of a tick bite, and several months later suffered a seizure, lockjaw, and facial numbness before being diagnosed with Lyme disease and Bell's palsy — strike the Court as sufficiently severe. Under controlling authority, a medical need is severe if it creates "a condition of urgency" that may result in "degeneration" or "extreme pain." *Hathaway* v. *Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks and citation omitted). Here, Plaintiff alleges that he has suffered facial

disfigurement and contracted Lyme disease, the latter of which in particular may result in long-term degeneration.

Because Defendant has assumed, *arguendo*, that these injuries are sufficiently severe, and because the Court sees no reason to hold otherwise, the Court turns to the second prong: whether Defendant was deliberately indifferent to Plaintiff's medical needs.

### 2. Dismissal Is Warranted Because Plaintiff Has Failed to Allege Deliberate Indifference to His Medical Needs

The Second Circuit has recently clarified that the second prong, "deliberate indifference," though often characterized as "subjective," is better understood as an element simply analyzing a defendant's *mens rea* — his or her intention or knowledge of wrongdoing — because it is "defined objectively." *Darnell*, 849 F.3d at 29, 35. This element requires proof that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[] knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. This standard therefore does not encompass "an inadvertent failure to provide adequate medical care." *Estelle* v. *Gamble*, 429 U.S. 97, 105 (1976). Instead, the defendant must have been aware of a substantial risk that the detainee would suffer serious harm. *Salahuddin*, 467 F.3d at 280.

Even viewing the facts in Plaintiff's favor, the Court cannot say that Defendant (or, indeed, anyone at GMDC) was deliberately indifferent to his medical needs. Plaintiff has failed to allege that Defendant ever saw the

9

circular mark on his arm or that Plaintiff ever told him about the mark. He fails to allege that Defendant knew or should have known that he had been bitten by a tick. And he fails to allege that Defendant knew or should have known that he was suffering from any symptoms or medical conditions other than the high blood pressure that he reported. Nowhere in his submissions does Plaintiff suggest that Defendant (or, again, anyone at GMDC) "acted intentionally to impose the alleged condition" or "recklessly failed to act ... even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.[3]

At most, Plaintiff has alleged that: (i) he "file[d] a gri[e]vance," though he does not indicate what that grievance said, with whom it was filed, or, more precisely, whether it was a *request* for medical treatment or a *complaint* that he did not receive it; (ii) after filing the grievance, he "was ignored by medical staff," though he does not specify which request was ignored or by whom; and (iii) he tried to "appeal" the staff's lack of responsiveness by speaking with Defendant and the John Doe Defendant nurse on October 5 and October 9, 2014, though he provides no details of any such conversations. (SAC 2, 4).

---

[3]  In his opposition brief, Plaintiff makes reference, among other things, to his "continued deprivation of adequate medical care," suggesting that Defendant should be held liable for present failures, if any, to address Plaintiff's medical needs. (Pl. Opp. 2). To be clear, the Court is deeply concerned about any deficiencies in the medical care that Plaintiff has received and currently receives. However, Plaintiff is no longer in the custody of the New York City Department of Correction, and in fact has been in the custody of DOCCS since July 21, 2015. (*See* Def. Reply 3). Accordingly, the instant litigation is not a means to address Plaintiff's current medical needs.

Plaintiff does not allege that he gave Defendant any reason to believe that he was at risk of contracting Lyme disease or any other severe medical condition.

Quite to the contrary, during the pre-motion conference, Plaintiff explicitly stated that he himself did not know that the mark on his arm was caused by a tick bite. (PMC Tr. 6:15-20). He also indicated that he only began to experience symptoms associated with Lyme disease five months after his release from GMDC in May 2015 (*id.* at 8:11-19), and that he only learned in July 2015 that the mark on his arm was likely caused by a tick bite (*id.* at 13:3-13).

Though Plaintiff claims that Defendant was deliberately indifferent to his medical needs, nothing in Plaintiff's pleadings supports that contention. While the Court is mindful — and law enforcement should be equally mindful — of the need for officers to ensure that detainees receive treatment for conditions of which the GMDC personnel are aware, Plaintiff has failed to allege that either Defendant Villalobos or the unnamed John Doe Defendant nurse knew of any of Plaintiff's needs other than his high blood pressure, for which he was treated twice during his four-month detention at GMDC.

Far from suggesting that Defendant was deliberately indifferent to Plaintiff's medical needs, the pleadings suggest that Defendant and GMDC medical personnel attended to each of the medical needs of which they were made aware. Plaintiff has failed to allege that any medical personnel knew, or should have known, of the circular mark on his arm or any attendant symptoms. For these reasons, Plaintiff's claim that Defendant Villalobos, or

11

the John Doe Defendant nurse, was deliberately indifferent to his medical needs fails as a matter of law. *Darnell*, 849 F.3d at 35.

**C.    Dismissal Would Likely Be Warranted Due to Plaintiff's Failure to Exhaust His Administrative Remedies**

During the pre-motion conference, the Law Department suggested a separate ground for dismissal: Plaintiff had failed to exhaust his administrative remedies. (PMC Tr. 18:1-6). Defendant did not advance this argument in his moving papers; the Court therefore declines to address the issue at length here. The Court pauses to note, however, that the issue appears to have some traction.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See also Espinal* v. *Goord*, 558 F.3d 119, 123-24 (2d Cir. 2009). "Failure to exhaust is an absolute bar to an inmate's action in federal court." *George* v. *Morrison-Warden*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *2 (S.D.N.Y. June 11, 2007); *accord Burgos* v. *Craig*, 307 F. App'x 469, 470 (2d Cir. 2008) (summary order) ("[Exhaustion] must be completed before suit is filed." (internal citation omitted)).

In New York State, DOCCS has established a three-tiered inmate grievance procedure. *See* 7 N.Y.C.R.R. § 701.5. That procedure applies equally to pretrial detainees and inmates. *See, e.g., United States* v. *Al-Marri*, 239 F. Supp. 2d 366, 367 (S.D.N.Y. 2002) (pretrial detainee required to exhaust

12

administrative remedies under the PLRA). First, the prisoner or detainee files a grievance with the Inmate Grievance Resolution Committee ("IGRC") within 21 days of the incident. *Id.* § 701.5(a), (b). Second, he or she may appeal from an adverse IGRC decision to the facility superintendent within seven days of the IGRC decision, and must complete and sign the appeal section of Form #2131 before submitting it to the superintendent. *Id.* § 701.5(c). Third, he or she may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"), by completing a Form #2133 ("Notice of Intent to Appeal") and submitting it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance. *Id.* § 701.5(d).

In the Second Amended Complaint, Plaintiff alleges, in relevant part, that he "followed procedure as to filing a gri[e]vance [b]ut was ignored by [the] medical staff" (SAC 2), and that he later "spoke with [a] nurse [and] doctor [at] Riker's Island GMDC #3 building" (*id.* at 4). He makes no further allegations regarding any grievances or appeals he may have filed. Based on the pleadings, it appears that Plaintiff has not completed the grievance procedure prescribed by New York law. *See* 7 N.Y.C.R.R. § 701.5. Plaintiff does not identify the individual with whom he filed his initial grievance, noting only that he "followed procedure as to filing a gri[e]vance." (SAC 2). Even if the Court reads this liberally to mean that Plaintiff filed the initial grievance with the IGRC, as required under Step 1 of the grievance procedure, Plaintiff did not follow the next two steps by appealing the decision to the facility

superintendent and then filing an appeal with CORC.  On their face, the pleadings therefore do not suggest that Plaintiff exhausted his administrative remedies.

## CONCLUSION

Defendant Villalobos's motion to dismiss is GRANTED because Plaintiff has failed to allege that Defendant acted with deliberate indifference to Plaintiff's medical needs.  Plaintiff's claim against Defendant Villalobos is dismissed with prejudice, as Plaintiff has twice amended his complaint, and any further amendment would be futile.  See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).  Plaintiff's claim as to the John Doe Defendant is dismissed without prejudice.  See Cox v. Vill. of Pleasantville, No. 11 Civ. 6516 (KMK), 2017 WL 4286645, at *19 (S.D.N.Y. 2017).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, in forma pauperis status is denied for purposes of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   February 5, 2018
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

William Yates
15-R-1759
Collins Correctional Facility
P.O. Box 340
Collins, NY 14034-0340